# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| John Zervas and Sandra Mula<br><br>Plaintiffs,<br><br>v.<br><br>Assured Fire/Water Restoration, Anthony Persiano, Carmelo Strazzeri, and William Bianco,<br><br>Defendants. | Civil Action No.<br>1:16-cv-8543-RBK-AMD<br><br><br><br>**RULE 56.1 STATEMENT OF MATERIAL FACTS** |

    1) At all material times defendants Anthony Persiano, Carmelo Strazzeri, and William Bianco held themselves out as owners of Assured Fire/Water Restoration ("Assured"), a construction restoration company that specialized in post-hurricane property restoration.  Mula Dec. at 2-4; Zervas Dec. at 2-4.

    2) Defendants schemed to take $150,000 from plaintiffs, ostensibly to fund three specific Assured construction projects.

    3) In order to entice plaintiffs to give them the money, defendants made several misrepresentations. *Id*.

4) Defendants held Assured out as a thriving construction company with millions of dollars in profits and assets.  *Id.*, and Mula Dec. at Exhibit A.

5) Defendants fabricated a "Business Plan" to further this scheme.  The Business Plan falsely indicated that Assured had millions of dollars in assets and profits/receivables.  *Id.*

6) The Business Plan was a fraudulent document.  In this litigation, defendants have been unable to identify any Assured projects for which the company was paid.  Dec. of Counsel, Exhibit A, Persiano Interrogatory Answer 18.

7) As part of their scheme, defendants led the plaintiffs on a tour of the company's impressive headquarters and a neighboring construction yard crowded with construction vehicles and heavy machinery.  They offered all of this equipment as security for the loan, suggesting a UCC lien for plaintiffs' benefit to be filed with the State of New Jersey.  Mula Dec. at 2-4; Zervas Dec. at 2-4.

8) Plaintiffs agreed and had a UCC lien filed as to Assured's supposed vehicles, equipment, and office supplies.  *Id.* and Mula Dec. at Exhibit B.

9) In this litigation, defendants have refused to identify the location of any of these property items that were supposed to secure the $150,000 loan.  The purported Assured office is vacant, and there is no construction equipment on the property.  Dec. of Counsel at 3.

10) Defendants represented to plaintiffs that the $150,000 would be used to fund 3 specific construction projects that were ready to proceed, and those projects were listed in the loan contract. Mula Dec. at Exhibit C.

11) Defendants' representations were false. In this litigation, defendants have been unable to produce a single piece of paper to show that any of these construction projects ever even existed. Dec. of Counsel at Exhibit A.

12) To induce plaintiffs into given them the $150,000, the individual defendants agreed to be personally liable for the debt and signed personal guarantees in that regard. Mula Dec. at Exhibit C.

13) The parties signed a contract, including personal guarantees, under which defendants agreed to repay the $150,000 by August 15, 2016.

14) Defendants made one payment, for $8,600. Mula Dec. at 5.

15) After defendants never paid them another dime, plaintiffs, through their Florida counsel, sent a letter to the individual defendants demanding payment. Mula Dec. at Exhibit D.

16) In response, the defendants threatened *plaintiffs* with a lawsuit. Mula Dec. at Exhibit E.

17) Plaintiffs filed this Complaint against Assured and the individual defendants on November 15, 2016, and promptly served defendants with the Complaint.

18) Defendants ignored the Complaint and default was entered on December 21, 2016.  ECF Doc#10.

19) Plaintiffs filed a Motion for Default Judgment on December 22, 2016.  ECF Doc#11.  Defendants opposed the Motion and asked the Court to give them a chance to prove their meritorious defenses.  ECF Doc.#13.  Specifically, defendants argued that they had in fact made a $30,000 payment on the loan, in cash.  Defendants did not offer a receipt, a bank statement, or any other documentation to support their assertion.

20) Plaintiffs maintained that defendants' contentions were false.  Plaintiffs filed declarations confirming that they never received the supposed $30,000 cash payment.

21) Defendants' delay tactics succeeded, as a decision on plaintiffs' Motion for Default Judgment was delayed until six months later, on June 22, 2017, and the Motion was denied.  ECF Doc.#19-20.

22) Specifically, on June 22, 2017, the Court denied plaintiffs' Motion for Default Judgment and granted defendants leave to belatedly file an Answer. *Id*.

23) Since that time, the defendants have tried to make a mockery of this litigation and this Court's authority.  They fail to respond to discovery.  They fail to communicate with their attorney when the Court has directed them to

communicate with their attorney. Thus the Court is forced to enter an Order requiring the defendants to appear in Court. See, generally, plaintiffs' Declarations.

24) The latest Court hearing, on March 26, 2018, was set nearly two months in advance to give defendant Persiano time to fit it into his busy work schedule – as noted above, Mr. Persiano claims he has been working in Texas to pay off Assured's debts. (Despite alleged toiling away down south, neither Mr. Persiano nor any defendant has paid a penny to the plaintiffs). Dec. of Counsel at 5. Dec. of Counsel at 5.

25) When plaintiffs sought to move discovery forward with depositions as waiting for the hearing that was essentially scheduled around Mr. Persiano's convenience, defendants refused to appear. Dec. of Counsel at 6.

26) The proverbial icing on the cake was delivered at the March 26, 2018, conference, when the defendants were Ordered to appear in court. Mr. Persiano refused to communicate with his attorney leading up to the hearing (the hearing which, again, was scheduled nearly two months in advance for him). Then he failed to appear for the hearing altogether. Dec. of Counsel at 5.

27) Moreover, at the hearing the Court told counsel that it was contacted *ex parte* by a representative of Mr. Persiano, although neither the identity of the representative nor the substance of the communication were

disclosed. (The Court indicated that Mr. Persiano's representative would contact plaintiffs' counsel and Mr. Persiano's own counsel, but that has not happened). *Id.*

28) Following the hearing, defense counsel re-filed his Motion to Withdraw, citing the defendants' persistent noncooperation with discovery. ECF Doc.#54.

29) Unfortunately, plaintiffs are not the only victims of defendants' fraud, and this is not the first proceeding in which the defendants have shown a flagrant disregard for the court's authority. Further, the other cases against defendants have been concluded.

30) In *Allen v. Assured, et al.,* a state court action filed on December 16, 2016, by two individuals who also provide a loan to defendants, the defendants' Answer and Defenses were stricken with prejudice on April 27, 2018, for failure to comply with their discovery obligations. Dec. of Counsel at Exhibit B. The Court's Summary Report for the *Allen* case suggests that the case is similar to the present matter insofar as defendants displayed a complete disregard for the judicial process and the Court's authority. *Id.*

31) In *Schoffer v. Assured, et al.,* the state court action was filed on August 14, 2017, and final judgment by default has already been entered against the defendants (on April 9, 2018). Dec. of Counsel at Exhibit C.

32) Nevertheless in this case, filed a month before the *Allen* case and approximately nine (9) months before the *Schoffer* case, defendants continue to waste the Court's time and plaintiffs' money, most notably by refusing to cooperate with discovery and failing to communicate with their attorney. ECF Doc.#64.

33) Plaintiffs submit that the Court should put an end to defendants' tactics and enter an Order for Summary Judgment in plaintiffs' favor.

34) Lastly, it bears noting that this is not defendants first foray into criminal activity including deceptive business practices. While the Assured "Business Plan," discussed above, lauded the decades of construction experience of the individual defendants, plaintiffs' counsel's own investigation suggests that two of the defendants, Mr. Persiano and Mr. Bianco, were involved with FirstPlus Financial Corporation, at the time when $12 million was stolen from the company, leading to several criminal convictions of other people involved. Dec. of Counsel at Exhibit E. In fact Mr. Bianco was identified as a President of the company during this same time period. Id. at Exhibit F. Plaintiffs question how their involvement with FirstPlus Financial gave Mr. Persiano and Mr. Bianco the substantial construction industry experience that the Assured Business Plan put so much emphasis on.

35) The fact that Mr. Persiano also was previously convicted and imprisoned for first degree murder raises more questions as to when Mr. Persiano would have had any time to obtain substantial construction industry experience. Dec. of Counsel at Exhibit G.

35) For all of the reasons set forth herein, it is respectfully requested that the Court enter an Order for Summary Judgment in favor of plaintiffs.

Respectfully Submitted,

**/s/ Paul F. Jenkins**
NJ Attorney # 016531995
**LAW OFFICE OF PAUL F. JENKINS**
7 MacArthur Boulevard, Suite 1008
Haddon Township, NJ 08108
Telephone: 609.941.5651
Fax: 856.946.1138
paul@pjenkinslaw.com